UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UPSTATE NETWORKS, INC., a New
York corporation; and CHRISTOPHER M.
SMOLEN,

                             Plaintiffs,

       -against-                                                    6:11-CV-01154 (LEK/DEP)

MICHAEL J. EARLY, SR.;
EARLY BIRD CARWASH, INC., a
Pennsylvania corporation; and MR.
BIRD'S CUSTOM CAR WASH
EQUIPMENT, LLC, a Pennsylvania
corporation,

                             Defendants.

_____

**MEMORANDUM-DECISION and ORDER**

## I.       INTRODUCTION

       On September 27, 2011, Plaintiffs Upstate Networks, Inc. ("Upstate Networks") and

Christopher M. Smolen ("Smolen") (collectively, "Plaintiffs") filed a Complaint alleging that

Defendants Michael J. Early, Sr. ("Early"), Early Bird Carwash, Inc. ("Early Bird Carwash"),

and Mr. Bird's Custom Car Wash Equipment, LLC ("Mr. Bird's Car Wash") (collectively,

"Defendants") engaged in conduct constituting libel, breach of contract, and intentional

infliction of emotional distress.  Dkt. No. 1 ("Complaint").  Presently before the Court is

Defendants' November 10, 2011 Motion to dismiss Plaintiffs' Complaint pursuant to Rule

12(b)(2) of the Federal Rules of Civil Procedure or, alternatively, to transfer venue pursuant to

28 U.S.C. §1404.  Dkt. No. 11 ("Motion").  Plaintiffs filed a response in Opposition to

Defendants' Motion, along with a supporting Memorandum of law, on November 29, 2011.

Dkt. Nos. 18 ("Plaintiffs' Opposition"), 20 ("Plaintiffs' Memorandum"). On December 5, 2011,

Defendants filed a Reply. Dkt. No. 23 ("Reply").  For the reasons that follow, Defendants'

Motion is granted, and Plaintiffs' Complaint is dismissed.

## II.    BACKGROUND

Plaintiff Upstate Networks is a corporation organized and existing under the laws of the

State of New York, with a principal place of business in Utica, New York.  Compl. ¶ 1.

Plaintiff Smolen is a citizen and resident of the County of Oneida in the State of New York.  Id.

¶ 2.  Defendant Early Bird Carwash is a corporation organized and existing under the laws of

the State of Pennsylvania with a principal place of business in the County of Lycoming,

Pennsylvania.  Declaration of Michael Early (Dkt No. 11-2) ("Early Declaration") ¶ 8.

Defendant Mr. Bird's Car Wash is a limited liability company organized and existing under the

laws of the State of Pennsylvania with a principal place of business in the County of Lycoming,

Pennsylvania.  Id. ¶ 14. Defendant Early retains ownership of Early Bird Carwash and Mr.

Bird's Car Wash and is a resident of the County of Lycoming in the State of Pennsylvania.  Id.

¶¶ 2, 5-6.

In or around 2007, Plaintiff Upstate Networks, Inc. was hired by Defendants to develop

and manufacture a credit card payment system for use in a self-service car wash.  Declaration of

Christopher Smolen (Dkt. No. 19) ("Smolen Declaration") ¶¶ 5-6.  Defendant Early, on behalf

of Early Bird Car Wash, initiated the business relationship with Upstate Networks in 2007.

Early Decl. ¶ 20; Pls.' Opp. ¶ 5.  On November 1, 2007, Smolen, on behalf of Upstate

Networks, visited the joint facility of Early Bird Car Wash. and Mr. Bird's Car Wash,

(collectively "Early's facility") at 933 Broad Street in Montoursville, Pennsylvania.  Mot. ¶¶ 5-

2

6.  Upstate Networks' initial proposal indicated that there would be additional visits to Early's facility with an engineer and programmer to follow this initial visit.  Early Decl. Ex. A; Early Decl. ¶ 24; Mot. ¶ 14.  The proposal for the project was created by Plaintiffs in Utica, New York and then transmitted to Defendants in Pennsylvania via electronic mail.  Id. ¶¶ 23-25; Smolen Decl. ¶ 11. When Early failed to respond, Smolen, on behalf of Upstate Networks, sent a letter with a lower quote, dated January 22, 2008, to Early Bird Car Wash.  Early Decl. ¶ 26, Ex. B.  Upstate Networks' quote indicates that Plaintiffs' performance of the system contract would include "travel for three on-site visits" to Early's facility in Pennslyvania.  Id.  In acceptance of the revised quote, Defendant Early, on behalf of Early Bird Car Wash, signed and executed a credit card authorization in Pennsylvania to place a $4,500 down payment on the contract.  Early Decl. ¶¶ 29-30.  The parties then proceeded with performance under the contract.  Id. ¶ 31. The contract was subsequently assigned from Early Bird Car Wash to Mr. Bird's Car Wash.  Id. ¶ 32.  The contract did not contain a forum selection clause.  Smolen Decl. ¶ 27.

The product was custom designed for Defendants, and all design and development work by Plaintiffs took place in or near Utica, New York.  Smolen Decl. ¶ 6.  After the contract was executed, Defendant Early traveled to New York between two and three times in 2008 to hold meetings regarding the project.  Early Decl. ¶ 33; Pls.' Opp. ¶¶ 10-11, 13.[1]  On or about August

---

[1]  Plaintiffs also include allegations regarding Defendant Early's business dealings with other New York entities.  Plaintiffs allege that Defendant Early: (1) scheduled meetings with Tom Hoffman of Hoffman Car Wash in Albany, NY; (2) contacted a Stu Card of Utica, New York via email for a business reference; (3) met with a Kenneth Lommler on October 9, 2008 in Utica, NY; (4) met with a Brett Truett of Softnoze USA, a Michael Harrigan of M&G Group, and a Vern Inman of Custom Fab on October 9, 2008 at the Custom Fab offices in Utica, New York; (5) consulted with a company called InstaChek & American

19, 2010, technicians from Upstate Networks traveled to Defendant Early's place of business in Pennsylvania to install and deliver the system.  Compl. ¶ 13.  According to Plaintiffs, the product could not be installed properly because Defendants did not have the proper network connectivity or power setup and were not willing to make the necessary changes and/or upgrades.  Id. ¶ 14-15.  Upstate Networks subsequently made at least two offers to install the product that were refused by Defendants.  Id. ¶ 16.  Beyond the meetings described above, all additional contact between Plaintiffs and Defendants was conducted by telephone and electronic mail.  Early Decl. ¶ 39.

Throughout the project, Upstate Networks billed Defendant Early through several invoices. Each of these invoices were paid, with the exception of the last invoice in the amount of $5,479.62, which remains unpaid despite repeated requests from Plaintiff Smolen.  Compl. ¶¶ 17-18.  Plaintiffs claim that this failure to pay constitutes a breach of contract.  Id. at 17-18. Plaintiffs also claim that, as the business relationship became strained, Defendant Early posted false and misleading messages on two websites ("autocareforum.com" and "yelp.com"), filed a complaint with the Better Business Bureau, and sent harassing and threatening email communications to Plaintiffs.  Id. ¶¶ 19-33.  Plaintiffs allege that these actions constituted libel and intentional infliction of emotional distress.  Id. at 5-16.

## III.  LEGAL STANDARD

Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the

Recovery Systems of Rome, New York regarding credit card processing matters; and (6) engaged in networking with Texas and Pennsylvania individuals at a trade show in New Jersey.  Smolen Decl. ¶¶ 30-38.

court has jurisdiction over the defendant.  Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84

F.3d 560, 566 (2d Cir. 1996).  Prior to discovery, a plaintiff may survive a 12(b)(2) motion to

dismiss by pleading in good faith legally sufficient allegations of jurisdiction.  Id. (citing Ball v.

Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)).  That is, where a court

relies only upon the pleadings and supporting affidavits, a plaintiff need only make a *prima

facie* showing of personal jurisdiction over a defendant.  Cutco Indus., Inc. v. Naughton, 806

F.2d 361, 364 (2d Cir. 1986) (citing Marine Midland Bank N.A. v. Miller, 664 F.2d 899, 904

(2d Cir. 1981)); Grand River Enters. Six Nations, Ltd. v. Prvor, 425 F.3d 158, 165 (2d Cir.

2005).

    "A *prima facie* showing of jurisdiction 'does not mean that plaintiff must show only

some evidence that defendant is subject to jurisdiction; it means that plaintiff must plead facts

which, if true, are sufficient in themselves to establish jurisdiction.'"  Tamam v. Fransabank

Sal, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (citation omitted).  Pleadings that assert only

"conclusory non-fact-specific jurisdictional allegations" or state a "legal conclusion couched as

a factual allegation" do not meet this burden.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181,

185 (2d Cir. 1998) (quotation omitted).  Finally, while a court is to assume the truth of all well-

pleaded factual allegations that support a finding of personal jurisdiction, Ball, 902 F.2d at 197,

it should "not draw 'argumentative inferences' in the plaintiff's favor."  Robinson v. Overseas

Military Sales Corp, 21 F.3d 502, 507 (2d Cir. 1994) (quoting Atl. Mut. Ins. Co. v. Balfour

Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).

**IV.    DISCUSSION**

    The Court must engage in a two-part analysis to determine whether it may properly

exercise *in personam* jurisdiction over Defendants: first, it must determine whether the laws of New York provide for jurisdiction; if they do, the Court must then decide whether an exercise of jurisdiction comports with federal due process requirements.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).  The Court finds that, contrary to Plaintiffs' Complaint, jurisdiction over Defendants cannot be based upon New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") §§ 301 or 302.  It therefore does not reach the second inquiry in the above analysis, whether such exercise would comport with constitutional due process.  The Court also does not reach Defendants' alternative request for a transfer of venue.

### A.  N.Y. C.P.L.R. Section 301

Section 301 of the N.Y. C.P.L.R. allows a court to "exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  N.Y. C.P.L.R. § 301. The comments to that section make clear that it provides for general *in personam* jurisdiction grounded on presence, consent, domicile, and doing business.  Id., cmt. C301.1.  Plaintiffs do not allege that Defendants are either physically present in New York, consent to jurisdiction in the state, or are a New York corporation, but rather claim that Defendants were "doing business" in New York state.

"[A] corporation is 'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'"  Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267 (N.Y.

1917)).  To satisfy the "doing business" standard, "a plaintiff must show that a defendant engaged in 'continuous, permanent, and substantial activity in New York.'"  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000) (quoting Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)).

A court should consider several factors "to determine whether a defendant can be reached under Section 301, including whether a defendant has an office, solicits business, has bank accounts and other property, or employs workers in the state."  Cortland Line Co. v. Vincent, No. 98-CV-259, 1999 WL 305369, at *2 (N.D.N.Y.  May 7, 1999) (citing Hoffritz, 763 F.2d at 58).  "Arguably the most important factor needed for a finding of jurisdiction under § 301 is the in-state presence of employees engaged in business activity."  Id. at *2 (citing Pellegrino v. Stratton Corp., 679 F. Supp. 1164, 1171 (N.D.N.Y. 1986)).  A court may also find jurisdiction when the activities of a non-domiciliary go beyond mere solicitation in encouraging others to "spend money (or otherwise act) in a manner that would benefit the [non-domiciliary]."  Wiwa, 226 F.3d at 98.  The substantial solicitation must be continuous and permanent.  See Beacon Enters. Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983).  Section 301's "doing business" standard is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York."  Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 567-68 (S.D.N.Y. 2006) (internal quotation marks omitted).

Here, Plaintiffs fail to satisfy the requirements of Section 301.  Indeed, Plaintiff's Memorandum of law in opposition to Defendants' Motion to dismiss does not include any analysis predicated on Section 301.  Plaintiffs do not allege that Defendants have agents, office

7

space, bank accounts, or employees located in the State of New York.  Plaintiff only alleges that

Defendants "engaged in a longstanding and continuous relationship with various New York

entities in the Northern District of New York, including but not limited to Plaintiffs."  Pls' Opp.

¶ 2.  Specifically, Plaintiffs indicate that Early traveled to New York on several occasions for

the purpose of engaging in business consultations, obtaining a business reference, contracting

and/or consulting with engineers, in addition to contracting with the Plaintiffs for the system

and website creation, maintenance, and registry.  Pls.' Mem. at 4-6.  To sustain personal

jurisdiction based on business solicitation "require[s] substantial solicitation that is carried on

with a considerable measure of continuity and from a permanent locale within the state."

Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983) (quoting Stark Carpet

Corp. v. M-Geough Robinson, Inc., 481 F. Supp. 499, 505 (S.D.N.Y. 1980) (internal quotation

marks omitted).  Plaintiffs' allegations – even taken as true for purposes of determining this

Motion – fall short well short of establishing that Defendants were "doing business" in New

York such that sustaining personal jurisdiction over them would be proper pursuant to N.Y.

C.P.L.R. § 301.

### B.  N.Y. C.P.L.R. § 302

N.Y. C.P.L.R. § 302 is New York State's long-arm statute.  Subsection (a) provides:

> As to a cause of action arising from any of the acts enumerated in this section,
> a court may exercise personal jurisdiction over any non-domiciliary . . . who in
> person or through an agent:
> 1.    transacts any business within the state . . . ; or
> 2.    commits a tortious act within the state . . . ; or
> 3.    commits a tortious act without the state causing injury to person
>       or property within the state, . . .  if he
>       (i)    regularly does or solicits business, or engages in any
>              other persistent course of conduct, or derives substantial

revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302(a).  Plaintiffs claim that jurisdiction is proper pursuant to N.Y. C.P.L.R. § 302(a)(1) and § 302(a)(3)(ii).  Pls. Mem. at 7-12.

*1. Section 302(a)(1)*

Section 302(a)(1) provides for personal jurisdiction over a party not present in the state where that party "transacts business" within the state, such that the nonresident may be deemed to have "'purposely availed [himself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." Bank Brussels Lambert, 171 F.3d at 787 (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18 (N.Y. 1970)); see also Don King Prod., Inc. v. Douglas, 735 F. Supp. 522, 527 (S.D.N.Y.1990) (central question for § 302(a)(1) analysis is whether defendant performed purposeful acts in New York in relation to the contract which is the basis upon which jurisdiction is asserted) (citations omitted).  A single purposeful transaction is sufficient to confer jurisdiction under this prong, so long as the cause of action against the non-resident party arises from that transaction.  Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158 (2d Cir. 2010).

Courts must look to "the totality of circumstances concerning the party's interactions with, and activities within, the state" to determine whether that party has "transacted business" with the state.  Bank Brussels Lambert, 171 F.3d at 787.  In considering whether a defendant has transacted business in New York within the meaning of Section 302(a)(1), the Second

9

Circuit has stated that:

> The question of whether an out-of-state defendant transacts business in New York is determined by considering a variety of factors, including: (i) whether the defendant has on-going contractual relationship with a New York corporation, (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship, (iii) what the choice-of-law clause is in any such contract, and (iv) whether the contract requires [defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. Although all are relevant, no one factor is dispositive. Other factors may also be considered, and the ultimate determination is based on the totality of the circumstances.

Agency Rent A Car Sys. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted).

In this case, while there does appear to have been an on-going contractual relationship between the parties, the contract was not negotiated or executed in New York, and it does not contain any choice of law or forum selection provision.  The vast majority of contacts between the parties in this business transaction were conducted over by telephone and email while Defendants were out of state.  Generally, "[c]ontacts through telephone calls, the mail, and by facsimile are insufficient to confer personal jurisdiction." Kahn Lucas Lancaster Inc. v. Lark Int'l Ltd., 956 F. Supp. 1131, 1135 (S.D.N.Y. 1997).  Rather, such "communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself." Maranga v. Vira, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005).  The leading example of such a projection occurred in Parke-Bernet Galleries, Inc. v. Franklin, in which a defendant participated via telephone in a live auction occurring in New York.  26 N.Y.2d 13 (N.Y. 1970).  In Parke-Bernet Galleries, Inc., "the nature of the defendant's call placed to New York

10

effectively placed the defendant himself in New York where a transaction was occurring."

Three Five Compounds, Inc. v. Scram Technologies, Inc., No. 11 Civ. 1616, 2011 WL

5838697, at *9 (S.D.N.Y. Nov. 21, 2011); see also Fischbarg v. Doucet, 9 N.Y.3d 375, 382

(N.Y. 2007) (out-of-state defendant utilizing an attorney licensed in New York "projected

themselves into our state's legal market"); Duetsche Bank Securities, Inc. v. Montana Board of

Investment, 7 N.Y.3d 65, 71-72 (N.Y. 2006) (jurisdiction proper where "sophisticated

institutional trader" engaged in multiple bond transactions through electronic communications

with New York, thereby "availing itself of the benefits of conducting business here").  Cases

such as these, in which the defendants virtually projected themselves into a specific New York

market, are easily distinguished from a case in which a defendant communicates by phone and

email about a discrete proposed or existing business transaction.  See Three Five Compounds,

Inc., 2011 WL 5838697, at *8-*9 (collecting cases).

Plaintiffs also allege that Defendant Early traveled to New York between two and three

times in 2008 to attend meetings regarding the project.  Pls.' Opp. ¶¶ 10-11, 13.  However,

these New York meetings did not occur during contract negotiations, but instead transpired as

performance of the contract was ongoing.  "Courts in this Circuit have repeatedly and virtually

universally declined to find that such meetings amount to the transaction of business."  Three

Five Compoundes, Inc., 2011 WL 5838697, at *11 (citing, inter alia, Barrett v. Tema Dev.,

Inc., 463 F. Supp. 2d 423, 430 (S.D.N.Y. 2006), aff'd, 251 F. App's 698 (2d Cir. 2007) (no

personal jurisdiction where parties met in New York to discuss already concluded investment

agreement); Kahn Lucas Lancaster, Inc., 956 F. Supp. at 1136 (same where defendant's officer

attended six meetings with plaintiff which "played no role in the formation of the relationship

between the parties" that occurred outside New York); Premier Lendings Servs. ., Inc., 924 F.

Supp. at 15 (same where "purpose of the meeting . . . was not to negotiate the terms of the

agreement, but rather to check on . . . slow progress")).

     Rather, "for meetings in New York which are subsequent to the formation of the

contractual relationship to confer jurisdiction, the meetings must be essential to the business

relationship or at least substantially advance it." Kahn Lucas Lancaster, 956 F. Supp. at 1136;

see also Cantor Fitzgerald, L.P. v. Peaslee, 88 F.3d 152, 156 (2d Cir. 1996) (no personal

jurisdiction where plaintiff did not allege that meetings over a two-day visit were "essential to

the formation or continuance of any business relationship").  Here, Plaintiffs do not allege that

the New York meetings were "essential" to their business relationship.  The meeting notes

attached as Exhibit D to Plaintiffs' Opposition (Dkt. No. 19-2) indicate that the meeting held on

February 5, 2008 was a progress report on the project.  See Concrete Detailing Serv., Inc. v.

Thomsson Steel Co., Inc., 411 F. Supp. 1021, 1023 (S.D.N.Y. 1976) (no personal jurisdiction

where "there was one visit for part of a day by an officer of defendant at which time the general

course of performance of the contract was apparently discussed").  Plaintiffs provide no details

on the other meeting or meetings that would support an inference that those meetings were

"essential" as described under this line of cases.

     Finally, Plaintiffs stress that "the actual performance of the contract, to wit, the

development and manufacture of the said payment system product, and related service and

support, was almost entirely performed in New York, for the benefit of Defendants."  Pls.' Opp.

¶ 7.  However, a "plaintiff's own activities in New York, on behalf of defendant, cannot be

relied on to establish the presence of the defendant in this state."  J.E.T. Adv. Assoc. v. Lawn

<u>King</u>, 84 A.D.2d 744, 744-45 (N.Y. App. Div. 1981), <u>appeal dismissed</u> 56 N.Y.2d 648 (N.Y. 1982) (citations omitted); <u>see also</u> <u>Royalty Network, Inc. v. Harris</u>, 95 A.D.3d 775, 776 (N.Y. App. Div. 2012).  Upon review of the totality of circumstances, the Court concludes that Plaintiffs do not allege facts that, if true, would allow for jurisdiction under N.Y. C.P.L.R. Section 302(a)(1).

   2. *Section 302(a)(3)(ii)*

New York's long-arm statute confers specific jurisdiction over a non-domiciliary who commits a tortious act outside New York, causing injury inside New York, if he "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. 302(a)(3)(ii).  This section specifically exempts causes of action for defamation of character.  <u>Id.</u>

To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii), "a plaintiff must demonstrate that the nonresident tortfeasor: (1) 'expects or should reasonably expect the act to have consequences in the state'; and (2) 'derives substantial revenue from interstate or international commerce.'"  <u>Ingraham v. Carroll</u>, 90 N.Y.2d 592, 596 (N.Y. 1997) (quoting N.Y. C.P.L.R. § 302(a)(3)(ii)).  "The first prong is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere.  The nonresident tortfeasor must expect, or have reason to expect, that his or her tortious activity in another State will have direct consequences in New York."  <u>Id.</u>  The second prong "narrows the long-arm reach to preclude the exercise of jurisdiction over non-domiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character."  <u>Id.</u> at 599 (internal

13

quotation marks and citation omitted).

Here, Plaintiffs do not allege – even in a conclusory fashion – that Defendants "derive substantial revenue from interstate or international commerce."  See Pls.' Mem. at 12. Plaintiffs allege that "Michael Early, through his Pennsylvania corporations, engages in interstate commerce with New York, New Jersey, Kentucky, and Ohio"; that "Early has purchased products . . . for the purpose of resale in other states"; that Early has "attended at least one trade show which hosted vendors, equipment, products, and services for the car wash industry from all over the eastern seaboard"; and that "his website has a national reach."  Id. While these allegations might suffice to show that Defendants engage in interstate commerce, they simply do not speak to whether any revenue derived from such commerce is substantial. Accordingly, the Court must deny personal jurisdiction against Defendants premised on § 302(a)(3)(ii).  See Ferri v. Berkowitz, 678 F. Supp. 2d 66, 78 (E.D.N.Y. 2009) (plaintiff fails to "make a prima facie case in support of personal jurisdiction pursuant to Section 302(a)(3)(ii)" where "there is absolutely no allegation or indication that [defendant] derives 'substantial revenue from interstate or foreign commerce.'").

IV.     CONCLUSION

Accordingly, it is hereby:

ORDERED, that Defendants' Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) (Dkt. No. 11) is GRANTED; and it is further

ORDERED, that Defendants' Motion to transfer venue (Dkt. No. 11) is DENIED as moot; and it is further

ORDERED, that Plaintiffs' Complaint (Dkt. No. 1) is DISMISSED without

14

**prejudice**, and it is further

ORDERED, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**


DATED:      August 23, 2012
            Albany, New York


            Lawrence E. Kahn
            U.S. District Judge

15